**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO
Judge William J. Martínez**

Criminal Case No. 12-cr-242-WJM

UNITED STATES OF AMERICA,

      Plaintiff,

v.

4.    RICKY HENRY CISNEROS,

      Defendant.

---

## ORDER DENYING MOTION FOR NEW TRIAL

---

Defendant Ricky Henry Cisneros was one of eleven defendants indicted on a charge of conspiracy to distribute methamphetamine in violation of 21 U.S.C. §§ 846, 841(a)(1), and 841(b)(1)(A)(viii).  (ECF No. 1.)  Defendant Cisneros pled not guilty to the charge, and to date is the only defendant named in the Indictment who has proceeded to a jury trial, which commenced on December 9, 2013.  (ECF No. 660.) After a five-day trial, Defendant was convicted of the crime charged.  (ECF No. 671.)

On December 27, 2013, Defendant filed a Motion for New Trial and to Compel Disclosure of Impeachment Evidence and for Leave to Supplement Motion[1] ("Motion"). (ECF No. 688.)  For the reasons set forth below, the Motion is denied.

### I.  LEGAL STANDARD

Rule 33(a) of the Federal Rules of Criminal Procedure provides that, "[u]pon the

---

[1] The Court finds that Defendant's request to supplement his Motion for a New Trial is moot because the entire trial transcript was available to Defendant before his reply brief was due.  (*See* ECF Nos. 743-49.)

defendant's motion, the court may vacate any judgment and grant a new trial if the interest of justice so requires."  Fed. R. Crim. P. 33(a).  "[I]n deciding a motion for new trial, the court may weigh the evidence and consider the credibility of witnesses in determining whether the verdict is contrary to the weight of the evidence such that a miscarriage of justice may have occurred."  *United States v. Evans*, 42 F.3d 586, 593 (10th Cir. 1994) (quotation marks and citation omitted).  "The Court's broad discretion empowers it to grant relief based not only on the sufficiency *vel non* of the evidence at trial but on any other circumstance that might render the trial 'essentially unfair,' including trial errors."  *United States v. D'Amelio*, 636 F. Supp. 2d 234, 238 (S.D.N.Y. 2009).

However, "[d]istrict courts view motions for new trials with disfavor."  *United States v. Lamy*, 521 F.3d 1257, 1266 (10th Cir. 2008).  "[A] litigant is entitled to a fair trial but not a perfect one, for there are no perfect trials."  *McDonough Power Equip., Inc. v. Greenwood*, 464 U.S. 548, 553 (1984) (alteration, internal quotation marks, and citation omitted).  "The jury's verdict must be allowed to stand unless the evidence weighs heavily enough against the verdict such that a miscarriage of justice may have occurred."  *United States v. Sturdivant*, 513 F.3d 795, 802 (8th Cir. 2008) ("[T]he authority to grant a new trial should be exercised sparingly and with caution."); *see also Richins v. Deere & Co.*, 231 F.R.D. 623, 625 (D.N.M. 2004) (an "alleged error by the trial court constitutes grounds for granting a new trial only where the trial court concludes that, absent the alleged error, a jury would likely have reached a contrary result.").

2

## II.  ANALYSIS

Defendant raises five bases for granting a new trial, each of which will be addressed in turn below.

### A.    Patricio Archuleta's Murder

Before the trial, Defendant filed a Motion *in Limine* that, in part, moved to exclude any reference to the fact that co-conspirator Patricio Archuleta had been murdered prior to the Indictment.  (ECF No. 594.)  At the Final Trial Preparation Conference, the Court found that Mr. Archuleta was relevant to the trial because he was at the center of the alleged drug conspiracy, and the Defendant was alleged to have been one of his drug suppliers.  On the other hand, the Court recognized that there was a potential for prejudice against the Defendant because the Government was going to present evidence showing that, before Mr. Archuleta was murdered, the Defendant had broken off his business relationship with Mr. Archuleta due to a drug debt.

Weighing these two competing factors, the Court found that excluding all evidence of Mr. Archuleta's murder would unnecessarily confuse the jurors, as they would inevitably wonder why he was not a named Defendant in the case, given all of the evidence that would be presented about his role at the center of the conspiracy. In an attempt to alleviate the prejudice to the Defendant, the Court warned the Government that it would not tolerate any attempt to link the Defendant to Mr. Archuleta's murder.  It also included the following instruction in its initial set of jury instructions:

During this trial, you will hear about a person named Patricio Archuleta.  You will hear testimony from witnesses about Mr. Archuleta and his drug-related activities, and you will hear recorded phone calls involving Mr. Archuleta.  Mr. Archuleta will not be participating in this trial because he was murdered in September 2011.

Mr. Archuleta's murder is not connected in any way to this case.  An unrelated individual has been arrested for the murder, and there is no connection alleged in this case between Mr. Archuleta's murder and the Defendant in this case, Mr. Cisneros.

I'm telling you about Mr. Archuleta's murder so that you are aware why he is not participating in this case.  You should not consider Mr. Archuleta's murder in any way when determining whether the Government has proven beyond a reasonable doubt that Defendant Cisneros is guilty of the crime charged in this case.

(ECF No. 743 at 27.)  The Court also gave a similar instruction in its final set of jury instructions.  (ECF No. 746 at 15.)

At trial, the Government elicited testimony that Defendant contends linked him to the murder.  Witness Tanessa Cole was a difficult witness, as she was emotional and had difficulty recollecting the events.  The Government questioned Ms. Cole about when the Defendant stopped selling drugs to Mr. Archuleta, which resulted in Mr. Archuleta obtaining a new supplier.  Ms. Cole was unable to recall.  In an attempt to assist her in remembering the timing of this event, the Government asked Ms. Cole whether Mr. Archuleta found a new supplier closer to the time that she had met Mr. Archuleta or closer to the time that Mr. Archuleta was murdered.  Ms. Cole stated that she thought it occurred closer to the time that Mr. Archuleta was murdered.  (ECF No. 743 at 126-28.)

4

Later in the trial, the Government elicited testimony from Reyna Mendoza-Haro that Mr. Archuleta had owed the Defendant $70,000 for a drug debt, and that the Defendant attempted to talk her out of associating with Mr. Archuleta due to this debt. (ECF No. 744 at 246-47.)  Finally, during the rebuttal portion of the Government's closing argument, as discussed more fully below, it contended that the jury should consider the harm to the public caused by the methamphetamine distributed by the Defendant.  (ECF No. 746 at 64.)

At the end of the first day of trial, Defendant made an oral motion for mistrial based on the testimony elicited from Tanessa Cole on direct examination by the Government.  (ECF No. 660.)  The Defendant then supplemented this motion after the direct examination of Reyna Mendoza-Haro.  (ECF No. 661.)  During argument on the motion, the Government conceded that its questioning of Ms. Cole was inartful, but the Defendant admitted that there was no evidence that the Government was acting in bad faith.

In ruling on the motion for mistrial, the Court acknowledged that the Government could have, and likely should have, chosen different signposts to refresh Ms. Cole's memory as to the timing of events.  However, the Court found that the Government's decision to use Mr. Archuleta's murder as a signpost was not bad faith.  The Court further found that Ms. Mendoza's testimony was not improper in any way.  The fact that Mr. Archuleta owed the Defendant money for drugs, and that the failure to pay this money resulted in the end of their distribution relationship, was an important part of the Government's theory of the case.  Mr. Archuleta's murder a few months after the drug debt arose was just a fact of timing and, the Court found that, absent some attempt to

link these two events together, Ms. Mendoza-Haro's testimony about the drug debt was not unfairly prejudicial to the Defendant.

The Court noted that its preliminary instructions to the jury informed them that they were not to consider Mr. Archuleta's murder in any way when determining the Defendant's guilt.  The Court found that Ms. Cole's testimony was not the sort that created such a strong link between the debt Mr. Archuleta owed to the Defendant and Mr. Archuleta's murder that the jury would be unable to disregard it in the consideration of the case.  Ms. Cole did not directly testify that the Defendant murdered Mr. Archuleta.  Ms. Cole did not even testify that she believed there was a link between the two events.  The prejudice here is that, given the sequence of questions, the jury could perceive a link.

In the Motion, Defendant reiterates his argument that all evidence of Mr. Archuleta's murder was irrelevant and unfairly prejudicial, such that he was denied his right to a fair trial.  For the same reasons the Court set forth at the Final Trial Preparation Conference, the Court finds that Mr. Archuleta's murder was relevant to this proceeding.  The Court agrees with Defendant that Ms. Cole's testimony was somewhat unfairly prejudicial against the Defendant, in that it could have led to an inference that the drug debt owed by Mr. Archuleta to the Defendant was connected to Mr. Archuleta's murder.  However, considering the entire trial, the Court does not find that this unfair prejudice denied Defendant of the right to a fair trial.

The Court's instruction at the beginning of the trial introduced Mr. Archuleta's murder to the jury in a manner that minimized any potential prejudice to the Defendant. The Court explained to the jury why it would not be hearing from Mr. Archuleta, and

explicitly stated that the Defendant was not in any way connected to the murder.  At both the beginning and the end of the trial, the jury was instructed not to consider Mr. Archuleta's murder in any way when determining whether the Government had proven its case beyond a reasonable doubt.  In ruling on a motion for new trial, the Court must presume that the jury followed the instructions it was given.  *United States v. Carter*, 973 F.2d 1509, 1513 (10th Cir. 1992) ("We presume jurors will remain true to their oath and conscientiously follow the trial court's instructions.").  The evidence presented at trial was not so egregious as to overcome the minimization of the prejudice that resulted from the Court's instructions.  *See United States v. Garton*, 336 F. App'x 804, 806 (10th Cir. 2009) (finding that district court's limiting instruction was sufficient to cure any unfair prejudice to the defendant from evidence showing that he was directly involved with a murder).  Thus, the Court finds that the admission of evidence regarding Mr. Archuleta's murder did not deprive the Defendant of a fair trial.

**B.     Evidence of Co-Defendant's Guilty Plea**

As previously noted, all of the other Defendants named in the Indictment pled guilty before trial.[2]  Co-Defendant Reyna Mendoza-Haro was a key witness for the Government at trial.  At the time she pled guilty, the only Defendants that were still persisting in their not guilty pleas were the Defendant and Arnaldo Alvarez-Gonzalez. Therefore, the factual basis for her Plea Agreement, which contained an agreement to cooperate with the Government, was specifically directed towards her interactions with Mr. Alvarez-Gonzalez and the Defendant.  (ECF No. 574 at 9.)  Five days before trial

---

[2]  One Defendant has yet to enter his guilty plea, but has filed an Notice of Disposition indicating his intent to do so.  (ECF No. 480.)

began, Mr. Alvarez-Gonzalez indicated his intent to plead guilty.  (ECF No. 634.)

At trial, the Government questioned Ms. Mendoza-Haro about her duties under the Plea Agreement.  (ECF No. 744 at 108.)  Ms. Mendoza-Haro responded that she had to cooperate fully, and that this meant that she had to tell the truth.  (*Id*.)  The Government did not express any opinion about whether it thought Ms. Mendoza-Haro was actually testifying truthfully.  (*Id*.)  The Government asked her about whether, prior to her testimony, she knew which co-conspirators she would be testifying against.  (*Id*. at 109.)  She responded that she believed other co-Defendants were going to be participating in the trial, but that they were not.  (*Id*.)  At that point, the Defendant reserved a motion.  (*Id*.)

Later in the direct examination, the Government asked Ms. Mendoza whether the outcome of this case would affect her deal with the Government.  (ECF No. 744 at 110.)  She responded that it did not, and that her only obligation was to tell the truth.  (*Id*.)  The Government moved to admit Ms. Mendoza-Haro's Plea Agreement, which garnered an objection from the Defendant and the Court took its lunch recess.  (*Id*. at 110-11.)  Over the lunch break, the Defendant explained his objection to admission of the Plea Agreement, and the Court sustained the objection to the extent it sought to exclude the factual basis for the plea.  (*Id*. at 113.)

The Defendant then made his second motion for mistrial.  (ECF No. 744 at 115-16.)  Defendant argued that Ms. Mendoza-Haro's testimony about other Defendants having pled guilty shortly before trial was irrelevant, unfairly prejudicial, and constituted improper vouching.  (*Id*. at 116.)  The Court denied the motion holding that the

8

Government's questioning of Ms. Mendoza-Haro about the her plea agreement, including her obligation to testify truthfully and cooperate with this prosecution, did not constitute improper vouching.  The Court noted that the Government did not explicitly or implicitly indicate that it has some way to monitor Ms. Mendoza-Haro's truthfulness, but simply asked questions about her responsibilities under the plea agreement, to which she responded that she had to tell the truth.  The Court found that, under the relevant case law, this is not improper vouching.  *See United States v. Bowie*, 892 F.2d 1494, 1498 (10th Cir. 1990) (holding that improper vouching occurs when the prosecutor expresses "a personal belief in the witness' credibility, either through explicit personal assurances of the witness' veracity or by implicitly indicating that information not presented to the jury supports the witness' testimony.")  Additionally, the Court found that Ms. Mendoza-Haro's obligations under her contract with the Government were relevant to bias and not unfairly prejudicial.

Defendant argued that Ms. Mendoza-Haro's testimony about which co-conspirators were proceeding to trial was improper vouching because the questions were designed to elicit testimony indicating that other Defendants were planning to go trial but changed their mind and pled guilty right before trial because Ms. Mendoza-Haro was going to testify against them.  (ECF No. 744 at 116.)  The Court noted that Defendant's argument misconstrued the record as Ms. Mendoza-Haro did not mention anything about the other co-Defendants pleading guilty or being influenced by her guilty plea and subsequent cooperation with the Government.  The Court also found that Ms. Mendoza-Haro's testimony did not amount to improper vouching because the Government neither explicitly nor implicitly attempted to show that it had some way of

affirming the truthfulness of Ms. Mendoza-Haro's testimony. (ECF No. 745 at 6.)

In the instant Motion, Defendant argues that the only permissible reason to introduce the plea of a co-conspirator is to assess that person's credibility. (ECF No. 688 at 4.) Defendant contends that it was improper to permit Ms. Mendoza-Haro to testify about Defendant Alvarez-Gonzalez pleading guilty in the days before trial because Defendant Alvarez-Gonzalez did not testify. (*Id*.)

The Court finds that Ms. Mendoza-Haro's testimony was not improper for the reasons set forth in the Court's prior ruling on Defendant's second motion for mistrial. The Court reiterates its finding that the Government did not elicit Ms. Mendoza-Haro's testimony about Defendant Alvarez-Gonzalez's guilty plea to imply that, because Mr. Alvarez-Gonzalez pled guilty, Defendant Cisneros must be guilty as well. Rather, the Court finds that the Government was attempting to lay a foundation for the admission of Ms. Mendoza-Haro's Plea Agreement, including the factual basis of the Plea Agreement which contained facts related not only to her dealings with the Defendant, but also with Mr. Alvarez-Gonzalez.

The Court sees no prejudice to Defendant which arose from Ms. Mendoza-Haro's testimony about which Defendants were left in the case at the time of her guilty plea as opposed to trial. Certainly, the admission of this evidence did not rise to the level that it deprived the Defendant of his right to a fair trial.

## C.    Closing Argument

At the end of the Defendant's closing argument, his counsel appealed to the sympathies of the jury by asking the jury not to "ruin [the Defendant's] life and the life of his family". (ECF No. 746 at 63.) When the Government began its rebuttal, the

10

Prosecutor argued:

> [W]hen you consider lives that are ruined, this defendant
> ruined his life.  This defendant ruined their lives.  This
> defendant ruined some of the lives you heard up there on
> the stand.
> . . .
> Yes, many lives, countless lives that we do not know about
> on the streets of Colorado and in this country right now have
> been ruined by one person in this room, the defendant.

(*Id*. at 64.)  At the end of the rebuttal portion of the Government's closing, the

Prosecutor stated: "And ladies and gentlemen, today justice reigns, and you will find the

defendant guilty, because he is guilty.  And today no more lives are going to be ruined.

He will be stopped."  (*Id*. at 70.)

After the jury had retired, Defendant moved for a mistrial based on these

comments.  (*Id*. at 71.)  Defendant argued that the Government was simply trying to

inflame the jury, which is prohibited. (*Id*. at 72.)  The Government contended that its

closing argument was proper because it was in rebuttal to the Defendant's closing.  (*Id*.)

The Court agreed with the Government and denied the motion.  (*Id*.)

In the instant Motion, the Defendant again argues that the Government's rebuttal

portion of its closing argument was improper.  (ECF No. 688 at 6.)  "Prosecutors are not

permitted to incite the passions of a jury by suggesting they . . . act as the 'community

conscience' to society's problems."  *United States v. Rogers*, 556 F.3d 1130, 1143

(10th Cir. 2009); *see also Wilson v. Sirmons*, 536 F.3d 1064, 1120 (10th Cir. 2008) ("It

is improper for a prosecutor to suggest that a jury has a civic duty to convict."

(quotations omitted)).  This restriction "is balanced, however, by the acknowledgment

that in an emotionally charged trial, the prosecutor's closing argument need not be

11

confined to such detached exposition as would be appropriate in a lecture." *United States v. Jones*, 468 F.3d 704, 708 (10th Cir. 2006).

The Court agrees with Defendant that, when read in isolation, the Government's comments could be considered improper as they call on the jury to consider the general welfare of society. But when evaluating whether a statement is improper, the Court must view the statement in context. *See United States v. Lopez-Medina*, 596 F.3d 716, 738 (10th Cir. 2010) ("When evaluating allegedly inappropriate remarks of counsel for plain error, we must view the remarks in the context of the entire trial.")

The Tenth Circuit has recognized that "considerable latitude is given [to] the prosecutor in closing argument in replying to an argument raised by defense counsel's closing statement." *United States v. Janus Indus.*, 48 F.3d 1548, 1558 (10th Cir. 1995); *see also United States v. Hall*, 625 F.3d 673, 685 (10th Cir. 2010) (same). By asking the jury not to ruin the Defendant's life and the life of his family, the Defendant opened the door to the Government's comments. As such, the Court finds that the Government's rebuttal closing argument was not improper. *See United States v. Fleming*, 667 F.3d 1098, 1105 (10th Cir. 2011) (finding that prosecutor did not improperly attempt to inflame the jury by commenting that the defendant was going to pollute the community with methamphetamine because the prosecutor's comments were in rebuttal to arguments raised by defense counsel); *United States v. Grey Bear*, 883 F.2d 1382, 1391-92 (8th Cir. 1989) ("It is well established that prejudicial error does not result from the improper remarks made during closing argument when such remarks were provoked by opposing counsel.").

**D.      Denial of *Brady/Jenks* Material**

During trial, the Government called co-Defendant Christina Malmgren to testify about the drug conspiracy in general, as well as what she knew about Defendant's participation in the conspiracy.  (ECF No. 744 at 163-96.)  Ms. Malmgren testified that she was friends with Patricio Archuleta, who she knew was a drug dealer, and had seen the Defendant at Mr. Archuleta's apartment on a number of occasions.  (*Id*.)

Before she testified, Ms. Malmgren had pled guilty to one count of using a telephone communications facility in furtherance of drug trafficking.  (ECF No. 292.)  In connection with her sentencing, the Court's Probation Department prepared a Presentence Investigation Report ("PSIR").  (ECF No. 366.)  Because a PSIR contains sensitive information, it is not publicly available.  *See* Fed. R. Crim. P. 32(e) (stating that the PSIR should be disclosed only to the Government, the defendant, and the defendant's counsel).  Although Ms. Malmgren was named in the same Indictment, neither Defendant Cisneros nor his counsel had access to Ms. Malmgren's PSIR.

In the instant Motion, Defendant contends that the Government should have disclosed Ms. Malmgren's PSIR as *Brady* material, because it contained "diagnosed mental conditions" that could have been used to impeach Ms. Malmgren.  (ECF No. 688 at 6.)  The Government admits that it likely should have asked the Court to review *in camera* the mental health observations in Ms. Malmgren's PSIR, but contends that its failure to do so did not constitute a *Brady* violation because this information was not "material", as that term is used in the *Brady* parlance.  (ECF No. 716 at 5.)

In *Brady v. Maryland*, the Supreme Court held that "the suppression by the prosecution of evidence favorable to an accused upon request violates due process where the evidence is material either to guilt or to punishment, irrespective of the good faith or bad faith of the prosecution."  373 U.S. at 87.  Evidence is "material" within the meaning of *Brady* "only if there is a reasonable probability that, had the evidence been disclosed to the defense, the result of the proceeding would have been different." *United States v. Young*, 45 F.3d 1405, 1408 (10th Cir. 1995) (quoting *United States v. Bagley*, 473 U.S. 667, 682 (1985)).  "Impeachment evidence as well as exculpatory evidence falls within the *Brady* rule."  *Young*, 45 F.3d at 1408 (citing *Giglio v. United States*, 405 U.S. 150, 154 (1972)).

The Court has reviewed Ms. Malmgren's PSIR and agrees with the Government's contention that this information was not material.  Without going into detail, the Court concludes that Ms. Malmgren's mental health diagnosis was not of the sort that would have provided significant fodder for impeachment.  There is no evidence that Ms. Malmgren suffers from a severe mental illness, or that her mental condition affected her ability or competency to testify truthfully.  *See Browning v. Trammell*, 717 F.3d 1092, 1106 (10th Cir. 2013) (finding that witness's "severe mental disorder" was material to impeachment because she "was known to blur reality and fantasy and project blame onto others.").

Defense counsel conducted an effective cross-examination of Ms. Malmgren and was able to significantly attack her credibility without this information about her mental health.  Defense counsel established that Ms. Malmgren was a heavy user of

methamphetamine at the time she allegedly witnessed the Defendant interacting with Mr. Archuleta, that she did not actually witness any drug deals between the Defendant and Mr. Archuleta, that she had a habit of lying and breaking promises to people, and that her testimony was likely to significantly decrease her sentence.  (ECF No. 744 at 184-195.)  Given all of this, the Court does not believe that the evidence of her mental health diagnosis would have significantly impacted Ms. Malmgren's credibility, and therefore such evidence was not material.[3]  *See United States v. McMahon*, 715 F.2d 498, 501 (11th Cir. 1983) (noting that psychiatric reports of the United States' key witnesses were not material because the defendants had ample opportunity to attack the credibility of the witness's testimony and there was no indication that the attack would have been strengthened if the psychiatric reports had been disclosed).

In sum, Defendant has not shown a reasonable probability that the outcome of the trial would have been different if he had had prior access to Ms. Malmgren's PSIR. Significantly, much of Ms. Malmgren's testimony was cumulative of other witnesses' testimony.  While the consistency of her testimony with the other witnesses certainly made the Government's theory of the case more believable, nothing she testified about was the proverbial nail in the Defendant's coffin.  As such, the Court finds that the Defendant has failed to show a *Brady* violation that would warrant a new trial.  *See United States v. Croft*, 124 F.3d 1109, 1124 (9th Cir. 1997) (holding that the district court did not err in refusing the defendant's request for psychological or psychiatric

---

[3]  The Court denies Defendant's Motion to Compel Disclosure of Ms. Malmgren's PSIR. (ECF No. 688 at 6.)  The PSIR contains sensitive information that is not typically disclosed to co-Defendants and, because the Court is not granting Defendant's Motion for New Trial, there is no reason to permit Defendant to view the PSIR at this time.

information regarding the United States' witnesses because she did not show that had

the evidence been produced, the trial outcome would have been different, and

specifically, the defendant did not demonstrate how such information would have been

helpful when her counsel already elicited the fact that a witness suffered complete

memory loss for three years before suddenly remembering that the defendant had

given the witness money to purchase guns).

**E.  Cumulative Effect**

Defendant's final argument is that, even if none of the errors individually deprived

him of a fair trial, the cumulative effect of the errors caused a deprivation.  (ECF No.

688 at 6-7.)  As discussed above, the Court disagrees with Defendant's contention that

the Government engaged in misconduct through its questioning of Ms. Mendoza-Haro

and/or its rebuttal closing argument.  Therefore, the Court does not consider these

issues in determining whether the entirety of the proceedings deprived Defendant of a

fair trial.

With respect to the errors that occurred—the Government's awkward attempt to

provide Ms. Cole signposts to assist her recollection of the timing of an event and its

failure to disclose Ms. Malmgren's mental health condition—the Court finds that these

issues, both in isolation and in combination, did not deprive the Defendant of his right to

a fair trial.  The Court instructed the jury that it was not to consider Mr. Archuleta's

murder when determining whether the Government had proven its case against the

Defendant, and the Court must presume that the jury followed this instruction.  Thus,

any prejudice to Defendant from the questioning was minimal.  Moreover, Ms.

Malmgren's testimony was not crucial to this case and, regardless, the Defendant was

able to draw her credibility into question through cross-examination, even without impugning her mental health.

Accordingly, the Court concludes that the cumulative effect of the errors made during trial did not deprive the Defendant of a fair trial.

### III.  CONCLUSION

For the reasons set forth above, the Court ORDERS as follows:

1.   Defendant's Motion to Supplement is DENIED AS MOOT based on the fact that the entire trial transcript was available before his reply brief was filed;[4]

2.   Defendant's Motion to Compel Disclosure of Ms. Malmgren's PSIR is DENIED;

3.   Defendant's Motion for New Trial (ECF No. 688) is DENIED; and

4.   The Defendant's sentencing hearing remains set for 10:00 a.m. on April 2, 2014.

Dated this 26th day of February, 2014.

BY THE COURT:

William J. Martínez
United States District Judge

---

[4]  The Court notes that it granted Defendant an extension of the deadline to file his reply brief so that the transcript could be incorporated therein.  (ECF No. 751.)